## EMANUEL W. HAMILTON vs. FREDERICK W. NICKERSON.

If a common carrier by water cannot find the person to whom goods carried by him are consigned, or any person representing the owner, and thereupon delivers them to a responsible warehouseman for safe keeping, receiving from him payment of all his charges, and there are no special facts to show that the warehouseman undertook to act as bailee of the carrier and not of the owner or consignee, and the goods are never called for, the carrier is not entitled to reclaim them from the warehouseman by paying the amount of his charges.

TORT to recover for the conversion of ten barrels of zinc paint. At the trial in the superior court, before *Morton*, J., it appeared that the plaintiff, being a common carrier by water, received the zinc paint on board his schooner at New York, to be transported to Boston, and safely and with all reasonable despatch conveyed it to Boston, where, upon his arrival, not being able to find the consignee, and after making every effort in his power to find him, he placed the goods in store with the defendant, who was and is a responsible person in that business in Boston, as storehouse keeper, for safe keeping, and received from the defendant payment of all his charges upon the goods, including freight, cartage, &c., for which he gave the following receipt: "Boston, April 18, 1860.  Mr. ——— to Despatch Line Dr.

| | | |
|---|---|---|
| For freight of 10 Bls. Paint at 20 | | $2.00 |
| | Boston Wharfage | .40 |
| | Cartage | .50 |
| | | $2.90 |

From New York per Schr. Cabot.

Received payment, E. W. Hamilton."

Neither the consignee nor consignor has ever appeared to claim the goods; and the defendant retained them in his storehouse until the spring of 1864, when, after applying to the plaintiff for information as to the consignee and learning nothing further, without notice to or authority from the plaintiff, he sold them at public auction. The plaintiff had demanded the goods of the defendant and offered to pay him the amount of his charges, and the defendant refused to surrender them.

Upon this evidence the defendant requested the court to rule that by the acts of the parties the defendant became the bailee of the owner of the goods, and that the plaintiff by his acts had discharged himself from further liability, and could not sustain this action; but the judge ruled that the plaintiff had such an interest in and right to the goods as entitled him to maintain his action. A verdict was accordingly returned for the plaintiff, and the defendant alleged exceptions.

*A. F. L. Norris,* for the defendant, cited Story on Bailm. §§ 126, 543; Angell on Carriers, § 291; *Fisk* v. *Newton,* 1 Denio, 45; *Mayell* v. *Potter,* 2 Johns. Cas. 371; *Phillips* v. *Earle,* 8 Pick. 182.

*H. A. Scudder,* for the plaintiff, cited Angell on Carriers, § 502; Story on Bailm. § 105; *Eaton* v. *Lynde,* 15 Mass. 242; *Dillenback* v. *Jerome,* 7 Cow. 297.

HOAR, J. There is no doubt that a common carrier is bound, not only for the safe carriage of the goods intrusted to him, but for their delivery to the owner or consignee, according to the usual course of business and the nature of his contract. Nor do we suppose that it can be questioned that the carrier is entitled to the possession of the goods until he has discharged himself of his obligation in that capacity. What facts amount to a delivery, so as to discharge the carrier, where an actual delivery to the consignee or owner becomes impracticable, or is not required by the nature of the transportation undertaken, according to the usual course of business, has been largely discussed in the text-books and reported cases, and there is some variance in the decisions. But it is clear, upon principle and authority, that when, as in the case presented by these exceptions, the carriage is to be by a ship from one port to another, and the goods have been placed on board by a consignor, and safely carried to the place of destination, and there landed, if the carrier, upon due and diligent inquiry, is unable to find any consignee, or person representing the owner, to whom he can deliver the goods or give notice of their arrival, he is not obliged to take them again on board his vessel, or retain them in his own possession and at his own risk and charge for an unlimited period; but he may,

after a reasonable time has expired, store the goods for the owner with some suitable and responsible warehouseman, and thereby discharge himself from further liability. From the necessity of the case, such storing of the goods is equivalent to a delivery.

It has not been denied by the plaintiff's counsel that such is the true rule of law, and that the carrier may, by taking this course, exempt himself from responsibility to the owner of the goods. But the question is not between the carrier and the owner, but respects the right of possession between the carrier and the warehouseman. In this view, it appears to be a new question, the precise point not having been previously adjudicated ; and it must be decided upon principle.

Undoubtedly the carrier, having lawfully obtained the custody of the goods, may retain that custody until he can deliver them to the owner or consignee, and until his charges for the carriage are paid, if he chooses to do so. He may make the warehouseman his own bailee, with the right to terminate the bailment at his pleasure, and assuming a liability to pay for the storage. But we think he may also do more than this. If he has the opportunity, and prefers to make the contract, he may make the warehouseman the agent and bailee of the owner, and thereby complete the delivery of the goods, and discharge himself from all further responsibility concerning them. If he did this, the warehouseman, paying the carrier his freight, would take the goods upon the credit of the owner and of the value of the goods themselves; his agency, although created by the carrier, would be for the owner directly ; his payment of the carrier's charges would be on the owner's account, would discharge the carrier's lien, and terminate his interest in the property. He would have no claim against the carrier in case of loss, and the carrier would have no right to interfere further with the property. The warehouseman would not be the bailee of the carrier, but of the owner.

The importance and necessity of such a power in a carrier is apparent in cases where his voyage is made to a port to which he has no intention of returning, and with which he has no means of ready or convenient communication. He is not bound

Hamilton *v.* Nickerson.

to assume a new and continuous obligation, not contemplated when he received the goods. His power to make a new contract on behalf of the owner results from his possession of the goods, without having it in his power to dispose of them in the manner originally intended; and he is not obliged to keep the custody of them, either personally or through a bailee of his own. The law then makes him the owner's agent, to provide on his behalf for the keeping of the goods.

The plaintiff in this case had the power and the right to make a contract with the defendant on his own behalf, or on account of the owner of the goods. If he had chosen to make the defendant his own bailee, the fact that the defendant advanced the freight would not be decisive against the maintenance of the action. But it is a fact which has a strong tendency to show that he made him the bailee of the consignee or owner. And upon the whole facts which the case discloses, we think the instructions asked by the defendant ought to have been given. That the plaintiff delivered the goods to the defendant, receiving from him the whole amount of his charges, and left him in possession of them for four years, without other act on his part, or evidence of a special contract other than that which would be naturally inferred from these facts, is sufficient evidence that the plaintiff considered himself, and was, free from further responsibility for, or interest in, the property.

The view which the court have taken of this question is precisely in conformity with the language used by the supreme court of New York in *Fisk* v. *Newton*, 1 Denio, 45, in deciding upon a carrier's liability to the owner, when no consignee could be found; a case more nearly resembling this than any other which has been cited, though presented in a somewhat different aspect. *Exceptions sustained.*